# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
### No. 5:25-CV-547-D

| | | |
|---|---|---|
| NICOLE ALEXANDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **PLAINTIFF'S MEMORANDUM IN** |
| NNE, Inc., | ) | **OPPOSITION TO DEFENDANT'S** |
| | ) | **MOTION TO DISMISS** |
| Defendant. | ) | |
| | ) | |

Plaintiff files this Memorandum in Opposition to Defendant's Motion to Dismiss in order to request this Court deny the Motion in its entirety. Defendant's motion must be denied because it grossly misconstrues the applicable pleading standard, and the Plaintiff has adequately plead her claims under Title VII, the Age Discrimination in Employment Act, the North Carolina Retaliatory Employment Discrimination Act, and under the common law of North Carolina.

## STATEMENT OF FACTS

Plaintiff Nicole Alexander is a female citizen and resident of Wake County, North Carolina over the age of forty who is a finance professional. Am. Compl. at ¶ 1-2. Ms. Alexander was hired by NNE, Inc. ("NNE") in August 2022 as Director of Finance, and showed excellence in her role throughout her time working there for both her ability and her professionalism. Am. Compl. at ¶ 7-8.

1

At a work event in January of 2024, Brian Gensch, an NNE team leader, became heavily intoxicated. Am. Compl. at ¶ 10. After the event, some NNE employees went to another bar, and Mr. Gensch continued to drink and act belligerent and aggressive, including towards someone in conversation with a female NNE employee. Am. Compl. at ¶ 11. Despite the female employee's insistence that she was fine, Mr. Gensch in his intoxicated state continued to act aggressively. Am. Compl. at ¶ 12. Following the event, on his way home, Mr. Gensch was arrested for drunk and disorderly conduct as well as assaulting an elderly woman. Am. Compl. at ¶ 13. Mr. Gensch was alleged to have shouted homophobic and sexist slurs at the elderly woman and her niece after they attempted to help him after he stumbled, and then assaulted them when they tried to convince him not to drive. Am. Compl. at ¶ 14. The incident and Mr. Gensch's arrest were published on local news multiple times, starting later that week on January 18, 2024. Am. Compl. at ¶ 16.

After being made aware of this event, Ms. Alexander met with Mr. Gensch's manager, Ryan Lake, and the local HR manager, Jenet Bethel. Am. Compl. at ¶ 17. When Mr. Gensch came in on January 19, 2024, he admitted to shoving the woman, and was told to return home until a course of action could be determined. Am. Compl. at ¶ 18. Ms. Alexander, Mr. Lake, and Ms. Bethel met and recommended to Mr. Jesper Bech, the NNE General Manager, that Mr. Gensch should be terminated due to his multiple violations of the NNE handbook and to ensure the company safety and culture. Am. Compl. at ¶ 19-21. Ms. Alexander, in particular, raised the concern of having a man who had assaulted a woman in the office. Am. Compl. at ¶ 21. Mr. Bech

disagreed with the recommendation of the trio of managers, and asked an unrelated manager for her opinion, who also recommended termination for Mr. Gensch. Am. Compl. at ¶ 22. Mr. Bech still decided to reject the recommendation and singled out Ms. Alexander repeatedly pointing and addressing her, stating that she needed to respect his opinion and then refused to talk to her until the following week. Am. Compl. at ¶ 22-23.

On January 24, 2024, Mr. Bech presented to the NNE CEO, Jesper Klove, and CFO, Chrisopher Hviid, about the incident, laying out the various courses of actions. Am. Compl. at ¶ 24. Ms. Bethel prepared the presentation and Ms. Alexander reviewed it, but both were excluded from presenting to the CEO and CFO the potential courses of action regarding Mr. Gensch's behavior. *Id*. After the presentation, a leadership group held a meeting including Mr. Klove, Mr. Hviid, Mr. Bech, Shawn Ferguson, Mr. Lake, Ms. Bethel, and Ms. Alexander. Am. Compl. at ¶ 25. During this meeting, Mr. Klove fixated many of his remarks on Ms. Alexander, disregarded the safety concerns of his female employees, and he stated that NNE would not terminate based on a news article and that they would not be judge and juror. Am. Compl. at ¶ 25-26.

On January 25, 2024, the day after the presentation about Mr. Gensch's behavior, Ms. Alexander met with Mr. Bech for a 1:1 meeting. Am. Compl. at ¶ 27. During this meeting, Mr. Bech asked Ms. Alexander to create a development plan that involved demoting herself and removing some supervisory duties, particularly HR duties, which would result in removing Plaintiff from a leadership role. Am.

3

Compl. at ¶ 27-29. Mr. Bech did this under the pretext of him not being able to work well with Ms. Alexander. Am. Compl. at ¶ 27, 29. Ms. Alexander submitted the requested development plan to Ms. Bech on January 30, 2024, and while he said it was acceptable, he gave her a final written warning, which was submitted to NNE's Denmark HR on February 2, 2024. Am. Compl. at ¶ 30.

Mr. Bech's warning was littered with factual misrepresentations and had references to the investigation of Bech, without giving any actual measurables of Ms. Alexander's performance. Am. Compl. at ¶ 31. Mr. Bech took issue with Ms. Alexander's communication and engagement skills, directly citing her raising legitimate safety concerns as "acting aggressively." Am. Compl. at ¶ 31-32. Many of these issues were not discussed with Ms. Alexander prior to the final written warning, nor was she aware of the alleged issues. Am. Compl. at ¶ 34. This final written warning was not based on legitimate criticisms and instead were pretextual and based on the safety concerns raised by Ms. Alexander as well as his discriminatory and retaliatory animus, as shown by Bech's factual misrepresentations and the proximity in time from the investigation. Am. Compl. at ¶ 35-36.

On February 21, 2024, Ms. Alexander submitted a complaint detailing the retaliation and gender discrimination from Mr. Bech to NNE. Am. Compl. at ¶ 37. NNE began a formal investigation, but when Ms. Alexander raised concerns that her complaint would result in retaliation, she was simply told that she could withdraw the complaint. Am. Compl. at ¶ 38-39. NNE concluded that they could not

substantiate the discrimination on March 11, 2024, and refused to offer Ms. Alexander an alternative reporting line. Am. Compl. at ¶ 40. Despite Ms. Alexander again raising her concerns of retaliation, all NNE offered was that she must take it up with Mr. Bech, the same man who was retaliating against her. Am. Compl. at ¶ 41-42.

On March 26, 2024, Mr. Bech gave Ms. Alexander a written warning devoid of measurables with factual inaccuracies. Am. Compl. at ¶ 43. Even after Ms. Alexander requested specific measurables regarding her warning and corrected the inaccuracies, she was ignored. Am. Compl. at ¶ 44.

On April 11, 2024, despite acknowledging that Ms. Alexander had complied with everything on the written warning, Mr. Bech terminated her on the pretextual grounds of being unable to work with her. Am. Compl. at ¶ 45. Ms. Alexander's termination followed a pattern of discrimination, with six of the recent terminations prior to Ms. Alexander's being women, including one who complained of discrimination based on gender. Am. Compl. at ¶ 48-49. Additionally, Ms. Alexander was the fourth manager to have been demoted by Mr. Bech among a team of seven managers, all of whom were older than Mr. Bech. Am. Compl. at ¶ 50-51.

ARGUMENT

## I. Defendant Grossly Misstates the Standard for a 12(b)(6) Motion

Defendant's motion is riddled with arguments about what Plaintiff has "failed to prove," improper references to NNE's own arguments made to the EEOC, and then fails to engage with the standard required at the pleadings stage in favor of the

5

summary judgment standard. In sum, Defendant makes repeated invitations to this Court to review NNE's internal documents in order to establish fact at the motion to dismiss stage. Well-settled case law mandates that invitation be rejected and the instant Motion be denied in its entirety.

Should the Court decide to entertain Defendant's motion, it should be considered as a motion for summary judgment. Defendant's motion is replete with evidentiary arguments including several that appear to be under the burden-shifting standard set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Defendant has argued against Plaintiff's prima facie case, arguing essentially that Plaintiff has, by her Amended Complaint, provided sufficient evidence of Defendant's so-called non-discriminatory reasons for engaging in the conduct complained of. However, it is well-settled law that the burden-shifting framework under *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement . . . [The Supreme Court] never indicated that the requirements for establishing a prima facie case under McDonnell Douglas also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-11 (2002). Accordingly, Defendant's repeated arguments engaging with the facts of Plaintiff's Amended Complaint, and under this evidentiary standard demonstrate that Defendant in fact filed a motion for summary judgment. As such, the Court must defer ruling on this motion until after Plaintiff has been afforded the opportunity to complete discovery. *See Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)

("a party must be afforded a 'reasonable opportunity for discovery' before a Rule 12(b)(6) motion may be converted and summary judgment granted.").

a. **Defendant Contests Facts and Utilizes Documents Outside of the Nature of Motion to Dismiss under Rule 12(b)(6).**

The purpose of Rule 12(b)(6) is "to test the sufficiency of the complaint and <u>not to resolve contests surrounding the facts</u>, the merits of a claim, or the applicability of defenses." *Layman v. MET Laboratories, Inc.*, 2013 WL 2237689, at \*4 (D.Md. May 20, 2013) (emphasis added) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). In analyzing a motion under Rule 12(b)(6), a court must "accept the facts alleged in the complaint as true." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 189 (4th Cir. 2010). The complaint must be viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, LTD v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Further, the complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citation omitted).

To survive a Rule 12(b)(6) motion, a complaint must contain enough facts to state a "plausible" claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the complaint pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is soundly established that Title VII is not subjected to any heightened pleading standard, and that a requirement of "greater 'particularity' . . . would 'too narrowly constrict[t] the role of

7

the pleadings." *Swierkiewicz*, 534 U.S. at 511 (*quoting McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283, n. 11 (1976)). "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* at 534 U.S. 511 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Defendant, however, urges a higher standard which more closely resembles that which is applicable at the summary judgment stage. Defendant attacks the factual basis of Plaintiff's complaint, wholly misconstruing the need for the facts to be viewed in the light most favorable to the Plaintiff. *Nemet Chevrolet, LTD*, 591 F.3d at 255.

Defendant brings into the record the EEOC charge of the Plaintiff, as well as other documents related to the EEOC's investigation including excerpts from the evidence Defendant submitted to the EEOC. *DE 8-1 – 8-9.*[1] Where documents are referenced by the Plaintiff in the Complaint and are integral to the complaint, or in the public record, they may be considered in the Motion to Dismiss. *See Sec'y of State For Defense v. Trimble Navigation,*, 484 F. 3d 700, 705 (4th Cir. 2007). However, these

---

[1] NNE attempts to circumvent the Motion to Dismiss standard and discovery process by inexplicably including the FOIA-requested EEOC documents as matters of public record that should lead to a factual determination at this stage.  Of course, the Defendant's interpretation could lead to such oddities as Motions for Judgment on the Pleadings in EEOC "for cause" determinations or as a stymie for the employee and management to participate in the EEOC process for concern that there would be no means to engage in discovery if there were Position Statements or Response to Position Statements submitted to the EEOC.  This is clearly not an adequate interpretation of using facts that are part of the public record in a Motion to Dismiss.

8

documents may only be cited for judicial notice. *Id.* In the two cases utilized by the Defendant, the right to sue letter, or lack thereof, was utilized to prove definitively that the Plaintiff had not eliminated their administrative remedies or improperly utilized them. *See Richardson v. Roberts*, No. 5:18-CV-Fl, 2019 WL 2030118, at *3 (E.D.N.C. May 8, 2019); *See also Barnes v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:22-cv-736. 2024 WL 1307217, at *3-5 (M.D.N.C. Mar. 27, 2024). That is not what the Defendant seeks here. Defendant instead seeks to utilize a wholly different set of documents—the Respondent's Position Statement and supporting exhibits—and then use these documents to contest disputed facts, rather than establish uncontested ones. Not only is there zero precedent to support the use of these documents to attempt to establish facts at the pre-discovery 12(b)(6) stage, the EEOC issued a Right to Sue and expressly made a no merit decision. *DE 8-3* (EEOC Determination and Notice of Right to Sue Letter). The EEOC's initial investigation letter and any internal documents of the Defendant are brought forth to dispute contested facts, which is improper at this stage for a 12(b)(6) motion to dismiss. These documents are not dispositive of the truth of these contested facts, and these facts must be seen in the light most favorable to the Plaintiff. *Nemet Chevrolet, LTD v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Having established the applicable standard on which to evaluate Plaintiff's complaint, Plaintiff next turns to each of Defendant's arguments under 12(b)(6).

## II. The Amended Complaint Establishes a Claim of Retaliation Under Title VII

Defendant argues that Plaintiff's Title VII Retaliation claim fails because she did not "plausibly allege" that NNE retaliated against her because of her engagement in protected activity. In doing so, NNE challenges two elements of the claim—that Plaintiff (1) engaged in protected activity, and (2) there is a causal connection between the protected activity and the adverse employment actions. As established above, Plaintiff's burden in this regard is not onerous, and only requires that she "allege[ ] facts supporting a plausible inference that [the employer took an adverse employment action against the plaintiff] 'because' of [the plaintiff's] protected activity." *Barbour v. Garland*, 105 F.4th 579, 590 (4th Cir. 2024) (*internal citations omitted*). Notably, Plaintiff is not required to show "but-for" causation at this stage. *Frowner v. Fayetteville State Univ.*, No. 5:24-CV-00064-BO-RN, 2024 WL 4829479, at *3 (E.D.N.C. Nov. 19, 2024) (*citing Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216–17 (4th Cir. 2016) ("But-for causation, however, is an element of proving retaliation, not pleading retaliation.").

In arguing that Plaintiff's Amended Complaint is insufficient in this regard, Defendant contests the well-plead facts in the Amended Complaint that establish her engagement in protected activity and that the protected activity led to adverse employment actions against her. Ms. Alexander did engage in her concerns of having a man who had assaulted a women in the office, and later when she raised her further concerns about sex discrimination when she filed a complaint. Am. Compl. at ¶ 20-21, 37-41. This protected activity was the cause for adverse actions in the form of Ms.

Alexander's demotion, final written warning, and later termination. Am. Compl. at ¶ 27-30, 45. Defendant is merely contesting facts, that should be held in the light most favorable to the Plaintiff. *Nemet Chevrolet, LTD v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

### a.  <u>Plaintiff Engaged in Protected Activity.</u>

Title VII provides that employees who oppose "any practice made an unlawful employment practice" by Title VII or participate in making a charge, testifying, or participating in any manner in an investigation, proceeding, or hearing under Title VII. *U.S.E.E.O.C. v. Bojangles Restaurants, Inc.*, 284 F. Supp. 2d 320, 327 (M.D.N.C. 2003).

Here, Plaintiff engaged in protected activity in two instances. Her first instance of protected activity came when she brought up the safety concerns regarding having a man who had assaulted a woman in the office, and she participated in the investigation into the same. Am. Compl. at ¶ 21. These concerns were grounded in the idea of having further sex-based misconduct in the office, which falls squarely within the auspices of Title VII. By recommending termination of Mr. Gensch for his conduct on this ground combined with the numerous policy violations he had committed, Ms. Alexander was engaging in protected activity. Am. Compl. at ¶ 20-21.

More importantly, however, Plaintiff *again* engaged in protected activity when she submitted a gender discrimination complaint to NNE's Denmark office on February 21, 2024. Am. Compl. at ¶ 37-41. In the course of NNE's investigation into

her complaint, Ms. Alexander even brought up her concern that she would be retaliated against with NNE's human resources. Am. Compl. at ¶ 39. Ms. Alexander's complaint about gender discrimination directly targeted at her is plainly protected activity under Title VII.

### b. <u>Plaintiff Plausibly Alleges Her Adverse Employment Actions were Because of Her Protected Activity</u>

Next, Defendant contests that despite Plaintiff's protected activity and her demotion and termination, Plaintiff's Amended Complaint does not plausibly allege that these events are causally connected. Defendant's argument rests heavily on nearly a full page of factual arguments unconnected to the Amended Complaint and devoid of even citation to the record that Defendant mistakenly urges this Court to consider at the pleading stage. D.E. 8, pp. 13-14. At this stage, Plaintiff meets this burden as shown by the tight time correlation between the first incident of protected activity, the complaint about workplace safety for sexual misconduct, and the first adverse action taken against her, the demotion and the written warning, which happened less than a week after the decision was made to not terminate Mr. Gensch. Am. Compl. at ¶ 21-30. This short window of time is enough to plausibly allege causation, which is what is necessary at this stage. *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1229 (4th Cir. 1998) (holding on summary judgment that "[a]lthough [plaintiff] presents little or no direct evidence of a causal connection between her protected activity and [defendant's] adverse action, little is required" to establish a prima facie case.

Further, the written warning given to Ms. Alexander directly addressed her safety concerns for female employees and cited them as a reason for her being given the written warning. Am. Compl. at ¶ 32. Ms. Alexander is also terminated because Bech could not work with Plaintiff—which was a statement made after her complaints. Am. Compl. at ¶ 45.

Defendant contests this as a cause of action, citing the fact that other members who supported termination for Mr. Gensch were not acted against. Not only is this not proper at the Motion to Dismiss stage, but it also ignores the fact that Plaintiff was the most senior person complaining and that she had specific complaints after a meeting in which multiple employees complained. However, arguments about comparators either offensively or defensively are improper for this motion, as all contested facts should be seen in the light most favorable to the plaintiff. *Nemet Chevrolet, LTD v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Therefore, it is improper for the Defense to raise this argument at this time. Additionally, the Plaintiff alleges that even amongst the supporters of Mr. Gensch's termination, Ms. Alexander was singled out and directly addressed. Am. Compl. at ¶ 22.

Defendant also relies upon their claimed legitimate nondiscriminatory reason for termination, which is again inapplicable at this stage. "[T]here . . . is no requirement that the complaint contain facts rebutting any legitimate, nondiscriminatory reason articulated by the employer for its allegedly retaliatory action." *Barbour v. Garland*, 105 F.4th 579, 590 (4th Cir. 2024). Plaintiff contests the

stated reasons for Ms. Alexander's termination as pretextual. Further, Mr. Bech admitted that Ms. Alexander had met the expectations laid out for her in her performance improvement plan in her termination meeting. Am. Compl. at ¶ 45. The purported reasons are slim and were subject to shifting metrics that she was admitted to be meeting. Am. Compl. at ¶ 44-45. This argument is inapplicable and inappropriate at this the current stage of a Rule 12(b)(6) Motion to Dismiss, and Plaintiff has met her burden to plausibly allege causation between her adverse actions and her protected activity.

### III.  Plaintiff has Exhausted Her Administrative Remedy Such that Her Hostile Work Environment Claim is Properly Brought

Defendant erroneously claims that Ms. Alexander did not exhaust her administrative remedies with respect to her Hostile Work Environment claim because she failed to file a charge of discrimination with the EEOC sufficient to put Defendant on notice of the HWE claim. They do so under the pretense that Ms. Alexander did not include the words "harassment" or "environment" in her EEOC charge—but this is not required in order for Ms. Alexander to have met the exhaustion requirement. In her Charge, Ms. Alexander included facts well above that which should have put Defendant on notice that she was alleging a hostile work environment claim. Specifically, the Charge included facts establishing that Alexander was in an environment rife with gender-based discrimination targeted at her. Further, the claim is reasonably related to the Charge, which Defendant's own citation establishes as the applicable standard. *See Batchelor,* 747 F. Supp. 3d 845 at

14

855. Alexander's hostile work environment claim stems from the same conduct and contributed to the severe gender-based harassment that Ms. Alexander suffered at NNE, through her singling out, demotion, exclusion from meetings, improper written warnings, and finally her termination. Throughout the Complaint, these adverse actions were directly tied to her proposal for women's safety and her own gender. These actions were raised in the Charge, and despite the lack of the actual word, the behavior of harassment was clear in both the EEOC Charge and the Complaint. Defendant's attempt to contest these facts is improper at this stage. *Nemet Chevrolet, LTD v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

## IV. Plaintiff States a Claim of Gender Discrimination

To state a claim for gender discrimination under Title VII, there is "no requirement that the complaint contain facts establishing the *McDonnell Douglas* framework's prima facie case, there also is no requirement that the complaint contain facts rebutting any legitimate, nondiscriminatory reason articulated by the employer for its allegedly retaliatory action." *Barbour v. Garland*, 105 F.4th 579, 590 (4th Cir. 2024). Assuming arguendo that Plaintiff need show a prima facie case of discrimination under Title VII in order for her claims to proceed, dismissal is still improper. To make out a prima facie case of discrimination in employment, Plaintiff must show: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees. *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010). To state a claim for a hostile work environment, a plaintiff must allege facts that show a

"workplace . . . permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (reversing grant of summary judgment against Plaintiff alleging hostile work environment based upon race).

Here, Plaintiff has met the burden of pleading for both a Hostile Work Environment and discriminatory treatment Gender Discrimination claim. Plaintiff suffered adverse actions in the form of her functional demotion, written warnings, exclusion from meetings, singling out for treatment, and finally her termination. Am. Compl. at ¶ 22-23, 27-30, 45. There is heavy inference that this behavior was discriminatory.

First, prior to her recommendation that Mr. Gensch be terminated and her complaints on gender safety grounds, Ms. Alexander had received no formal discipline, negative feedback, and she was meeting the legitimate expectations of her employer. Am. Compl. at ¶ 8-9. This all changed after these incidents where Ms. Alexander began to be excluded, singled out, and reprimanded. Am. Compl. at ¶ 22-23. Ms. Alexander's concerns regarding female safety in the office with having a co-worker who had violently assaulted a woman were deemed "aggressive." Am. Compl. at ¶ 31-32. This reframing provided Defendant with the pretext to attack Ms. Alexander over her advocacy over an important safety issue for women.

Contemporarily with this, six of the Defendant's most recent terminations had been women. Am. Compl. at ¶ 48. This included women that had complained of gender

16

discrimination, just like Ms. Alexander. Am. Compl. at ¶ 37, 49. It follows that men were therefore less likely to be targeted for termination. These behaviors give significant inference of discrimination and allow the Plaintiff to plausibly allege and claim gender discrimination enough to defeat a Motion to Dismiss at this time.

### V. Plaintiff States a Claim under the ADEA

Defendant incorrectly claims that Plaintiff has not plausibly alleged age discrimination under the ADEA. Plaintiff has met this burden as Ms. Alexander qualifies for the protected class, as she is over 40, and there are other factors that lead to an inference of age discrimination in the conduct of Defendant. Am. Compl. at ¶ 81. Of a team of seven managers when Mr. Bech started, he had demoted three of them, all of whom were older than him, when the events between him and Ms. Alexander occurred. Am. Compl. at ¶ 50. After Ms. Alexander's demotion, she became the fourth such occurrence. Am. Compl. at ¶ 51. These facts taken as true make a claim of Age Discrimination plausible under the ADEA. Defendant's contention that Plaintiff must include in her Complaint the reasons for these demotions, the ages of these individuals, the ages of the decision-makers, and the age of Mr. Bech is far afield from the confines of Rule 12(b)(6), and would in essence require plaintiffs pleading age discrimination to pre-prove their case in order to proceed to discovery. The Defendant's fixation on further details of proof of age discrimination that are inappropriate at this time; in order to succeed under a Motion to Dismiss via Rule 12(b)(6), all facts must be viewed in the light most favorable to the Plaintiff. *Nemet Chevrolet, LTD v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Under

that view, Plaintiff has plausibly alleged age discrimination in violation of the ADEA, and she has even identified a pattern and practice of age-based discrimination perpetrated by her supervisor—evidence relevant at the summary judgment stage and at trial—not before discovery.

## VI. Plaintiff States a Claim of Wrongful Discharge in Violation of Public Policy

NNE argues that Plaintiff's termination is not sufficient to constitute a wrongful discharge under North Carolina law. The North Carolina Equal Employment Practice Act, N.C. Gen. Stat. § 143-422.1, *et seq.*, makes discrimination on account of gender and age a violation of public policy. For the reasons explained in this brief, supra IV, V, Plaintiff's Wrongful Discharge in Violation of North Carolina Public Policy claim was also sufficiently plead. *See Dept. of Correction v. Gibson*, 308 N.C. 131, 141, 301 S.E.2d 78, 85 (1983) (holding the ultimate purpose of N.C.G.S. ¶ 143-422.2 and Title VII are the same). Plaintiff has established, supra IV, V, that the Amended Complaint sufficiently forecasts how NNE discriminated against Plaintiff and therefore sufficiently states claims for wrongful discharge under North Carolina law.

## VII. Alexander Engaged in Protected Activity Under REDA by Raising Safety Concerns

Finally, Defendant argues that Plaintiff's claim under the North Carolina Retaliatory Employment Discrimination Act ("REDA") should be dismissed. As with

the prior arguments, Defendant again does so by disputing Plaintiff's well-plead facts and misconstruing established case law.

REDA provides that "[n]o person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to [. . .] [f]ile a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action [...] with respect to [...] Article 2A or Article 16 of this Chapter." N.C. Gen. Stat. § 95-241(a). OSHANC requires employers to provide a place of employment free from "recognized hazards" that are likely to cause "death or serious injury or serious physical harm" to employees. N.C. Gen. Stat. § 95-129(1). North Carolina courts have defined recognized hazards as ones that a "reasonably prudent employer would have recognized" and taken steps to protect employees from. *Bostian v. Marietta*, 763 S.E.2d 339 (N.C. Ct. App. 2014). Plaintiff alleged she investigated, complained, provided information regarding the Gensch incident, raised workplace safety concerns for female employees, and recommended termination due to multiple policy violations—all while working with HR to address safety implications in the workplace. At the pleading stage, these allegations plausibly constitute initiating an inquiry and providing information "with respect to" workplace safety. Defendant's self-servingly narrow reading of Plaintiff's allegations is contrary to the statutory text pled and inappropriate on a motion to dismiss.

a. **The Amended Complaint Establishes that Alexander Engaged in Protected Activity Under REDA**

In order to support its contention that Ms. Alexander's complaints regarding workplace safety do not constitute protected activity under REDA, Defendant cites to

19

*Abernathy v. Mission Health Sys., Inc.*—an unpublished North Carolina Court of Appeals opinion affirming the grant of summary judgment. *Abernathy* addresses what a Plaintiff must *show* at the summary judgment stage in order to proceed to trial. This standard is inapplicable to the motion to dismiss currently before the court. Moreover, the additional cases cited by Defendant reference issues in which plaintiffs complain informally to a supervisor, and *then* complain to Human Resources that they suffered retaliation as a result of those informal complaints. Even assuming this were settled law, Plaintiff's allegations are quite different—she took actions to address the serious workplace safety threat posed by Gensch after he acted aggressively and belligerently at a work event and assaulted two women as he was leaving that event. These complaints fall squarely within the coverage of OSHANC's mandate that employers provide a place of employment free from "recognized hazards." See, e.g. *Driskell v. Summit Contracting Grp., Inc.*, 828 F. App'x 858, 867 (4th Cir. 2020) (holding that an employee's complaints regarding a supervisor's "presence at the work site while intoxicated" and an assault are sufficient to state a workplace safety complaint constituting protected activity under REDA).

As established in the Amended Complaint, "Plaintiff engaged in protected activity by, *inter alia*, investigating, complaining, providing information regarding Mr. Gensch's actions, and ultimately recommending Mr. Gensch's termination." Am. Compl. ¶ 101. Because Plaintiff establishes that her REDA claim is sufficiently plead, the same is true for her wrongful discharge claim based upon Plaintiff's workplace safety complaints under N.C. Gen. Stat. § 95-241.

**CONCLUSION**

For the aforementioned reasons, Plaintiff requests that this Court deny Defendant's motion in its entirety because Plaintiff has sufficiently stated claims under Title VII, the ADEA, REDA, and under the common law of North Carolina. In the alternative, Plaintiff asks this Court to defer ruling on Defendant's motion until the completion of discovery because Defendant has filed a motion for summary judgment.

This the 27th day of October, 2025.

**Kornbluth Ginsberg Law Group, P.A.**
/s/ Joseph E. Hjelt
Michael A. Kornbluth
N.C. Bar No. 27928
Email: mkornbluth@kglawnc.com
Joseph E. Hjelt
N.C. Bar No. 53497
Email: jhjelt@kglawnc.com
3400 Croasdaile Drive, Suite 300
Durham, North Carolina 27705
Telephone: (919) 401-4100
Facsimile: (919) 401-4104

21

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the undersigned has this date filed the foregoing

document with the Clerk of Court using the CM/ECF system which will send

notification of such filing to the following:

> Lauren Fussell
> WILLIAMS MULLEN
> 301 Fayetteville St
> Suite 1700
> Raleigh, NC 27604
> Telephone: (919) 981-4000
> Fax: (919) 981-4300
> Email: lfussell@willaimsmullen.com

This the 27th day of October, 2025.

**Kornbluth Ginsberg Law Group, P.A.**

/s/ Joseph E. Hjelt
N.C. Bar No. 53497
Email: jhjelt@kglawnc.com
3400 Croasdaile Drive, Suite 300
Durham, North Carolina 27705
Telephone:   (919) 401-4100
Facsimile:    (919) 401-4104
*Attorneys for Plaintiff*

22