| | | |
|---|---|---|
| NICOLE ALEXANDER, | ) | |
| | ) | |
| Plaintiff, | ) | **REPLY IN SUPPORT OF** |
| | ) | **DEFENDANT'S MOTION TO DISMISS** |
| v. | ) | |
| | ) | Local Civil Rule 7.1(g)(1) |
| NNE, INC. | ) | |
| | ) | |
| Defendant. | ) | |

Ms. Alexander primarily seeks to stave of dismissal of her amended complaint by erecting procedural objections over what information should be part of record. In addition, she asserts just a few substantive arguments which invite the Court to suspend its common sense and refrain from drawing on its considerable judicial experience and, instead, accept speculation in lieu of facts to state claims for relief. Neither of these challenges should delay the Court from granting NNE's motion. *Batchelor v. City of Wilson*, 747 F. Supp. 3d 845, 868 (E.D.N.C. 2024).

## I. THE EXHIBITS TENDERED BY NNE ARE PROPERLY BEFORE THE COURT AND MAY BE CONSIDERED WITHOUT CONVERTING THE PENDING RULE 12 MOTION INTO A RULE 54 MOTION.

NNE filed nine exhibits with its motion. *See* ECF Nos. 8.1-8.9. Ms. Alexander decries the practice while simultaneously acknowledging that both documents referenced in her amended complaint and integral to it and documents in the public record may be considered in ruling upon NNE's Rule 12 motion. *See, e.g.,* Pl's. Memo. in Opp'n to Def's. Mot. to Dismiss (ECF No. 13, hereinafter, "Opp'n") pp. 8-9. As

150362943.2

detailed below, her objections to the Court's consideration of the exhibits are meritless.

EEOC Charge (ECF No. 8-1). This document, jointly authored by Ms. Alexander and her counsel, is explicitly referred to in paragraph 52 of the amended complaint and integral to it. Moreover, she does not attack the authenticity of the document.[1] Nor could she, having declared under penalty of perjury that her allegations made in the Charge are true and correct. She is the party who had introduced the Charge into this action; NNE simply supplied the Court with a copy of the referenced document.[2]

NNE cited to the Charge six times in its brief. Once as part of the recitation of the procedural history of the action, and once in the Statement of Facts to supplement amended complaint's factual description of the Gensch incident. (ECF No. 8 pp. 1, 3). NNE cites the Charge four times in the argument section. Once to show that her HWE claim had not been exhausted before the agency. (ECF No. 8, p. 15). Twice in opposition to her ADEA claim; first to reveal the fact that she was 49 years old at the time of the challenged employment actions, and then to trace how she had cut the allegations of discrimination from her Charge and pasted them into her amended complaint. (ECF No. 8, p. 21). Finally, NNE cited the sworn allegations of Charge around the recommendation to immediately terminate Mr. Gensch to show that REDA did not protect this activity. (ECF No. 8 p. 23).

---

[1] Or any other challenged exhibit.

[2] The same is true for the other challenged exhibits with the exception of ECF No. 8-2.

None of these citations create a dispute over contested facts. Indeed, even Ms. Alexander tacitly recognizes that the Court **must** review the allegations of the Charge to resolve NNE's Rule 12(b)(1) motion based on her failure to exhaust the HWE claim before the EEOC. *See* Opp'n p. 9 (inaccurately arguing that NNE is not seeking dismissal for failure to exhaust administrative remedies).

EEOC Charge File Excerpts (ECF No. 8-2). The Court may take judicial notice of these public records. NNE cited to these excerpts three times in its brief. Twice as part of the recitation of the complete and accurate procedural history of the action before the EEOC. (ECF No. 8 p. 2). And once in the argument to establish the uncontested fact that Ms. Alexander was represented by counsel before the EEOC. (ECF No. 8 p. 15).

EEOC Determination (ECF No. 8-3). This public record is explicitly referred to in paragraph 53 of the amended complaint and integral to it. NNE cited to this document once in its brief as part of the recitation of the complete and accurate procedural history of the action before the EEOC. (ECF No. 8 p. 2). NNE does not cite the document to establish any fact. Ironically, Ms. Alexandar cites the same document she seeks to exclude for support of her argument. *See* Opp'n p. 9.

PowerPoint Slide Deck (ECF No. 8-4). This document is explicitly referred to in paragraph 24 of the amended complaint and integral to it. NNE cited to the presentation four times in the Statement of Facts to establish the following uncontested facts: witness interviews were conducted after the recommendation to immediately fire Mr. Gensch had been made; the actual substance of slides presented

3

to senior management rather than Ms. Alexander's characterization of them; and the absence of policies around sexual harassment/discrimination and workplace safety from the list of NNE policies implicated by the Gensch incident. (ECF 8 pp. 4-5). None of the citations create a dispute over competing facts.

Near Term Development Plan (ECF No. 8-5). This document, authored by Ms. Alexander, is explicitly referred to in paragraphs 28 and 30 of the amended complaint and integral to it. NNE cites to the plan twice in its brief to establish uncontested facts around the continuing management of her performance. (ECF No. 8 p. 6). The terms of the plan correct both the so-called facts alleged in the amended complaint that Mr. Bech had "tasked Ms. Alexander with creating a development plan to demote herself," and her characterization of the plan's contents. (ECF No. 1-4 ¶¶ 28, 30.) Contrary to Ms. Alexander's argument, when there is a conflict between the terms of a document referenced in a complaint and the associated allegations made in the pleading, the terms of the document prevail. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Thus, the citations to the plan do not create a factual dispute.

January 2024 Final Written Warning (ECF No. 8-6). This document is explicitly referred to in paragraphs 30 through 36 of the amended complaint and integral to it. NNE cited to the form four times in the Statement of Facts to establish uncontested facts around the continuing management of her performance. (ECF No. 8 p. 7). The citations establish material facts selectively omitted from the amended

complaint, and otherwise presents them to the Court shorn of the spin applied to them by Ms. Alexander in the allegations of her amended complaint.

Internal Complaint (ECF No. 8-7). This document, authored by Ms. Alexander, is explicitly referred to in paragraph 37 of the amended complaint and integral to it. NNE cites to the complaint ten times in the Statement of Facts to establish material uncontested facts selectively omitted from the amended complaint about the content of the "chastisement" received for recommending the immediate termination of Mr. Gensch; removing Ms. Alexander's supervisory responsibility for the HR function; and the ongoing management of Ms. Alexander's performance. (ECF No. 8 pp. 4-6, 8). Citing to Ms. Alexander's own words is proper and does not convert the pending motion into one for summary judgment.

Email Chain about Internal Investigation (ECF No. 8-8). This document, authored in part by Ms. Alexander, is explicitly referred to in paragraphs 41 and 42 of the amended complaint and integral to it. NNE cites to the email chain four times in the Statement of Facts to establish material uncontested facts selectively omitted from the amended complaint – and in one instance misrepresented – about the substance of the virtual conversation between Ms. Alexander and Nina Haff Jørgensen. (ECF No. 8 pp. 7-8). The Court may read the actual discussion and is not bound by Ms. Alexander's description of the interaction found in the amended complaint.

March 2024 Final Written Warning (ECF No. 8-9). This document is explicitly referred to in paragraph 43 of the amended complaint and integral to it. NNE cited

to the form four times in the Statement of Facts to establish uncontested facts around the particulars of the continuing management of her performance, with a follow-up meeting scheduled for April 11th. (ECF No. 8 pp. 9-10). The Court may consider the substance of the document as establishing the uncontested fact that, as of March 26, 2024, Mr. Bech perceived Ms. Alexander's performance as lacking in numerous areas, specifically her unabated failure to build a working relationship with him – which is cited in the amended complaint as the reason offered for her termination.

## II. THE "SAFETY CONCERNS" MS. ALEXANDER ALLEGED HAS HAVING RAISED ABOUT MR. GENSCH'S CONTINUED EMPLOYMENT FALL SHORT OF ACTIVITY PROTECTED BY TITLE VII.

Ms. Alexander argues in conclusory fashion that she had engaged in activity protected by Title VII by "expressing safety concerns about having a man who had assaulted a woman in the office." *See* Opp'n p. 11 (citing ¶ 21 of the Am. Compl.). She neither cites authority which supports the assertion,[3] nor distinguishes the authority cited by NNE. In effect, Ms. Alexander has abandoned the Title VII claim of retaliatory demotion. *See Bronitsky v. Bladen Healthcare, LLC*, No. 7:12-CV-147-BO, 2013 WL 5327447, at *1 (E.D.N.C. Sept. 20, 2013) (plaintiff's failure to substantively oppose defendants' arguments made in support of their dispositive motion is fatal to plaintiff's claim).

## III. MS. ALEXANDER'S RELIANCE ON TEMPORAL PROXIMITY TO PLAUSIBLY STATE A RETALIATION CLAIM IS MISPLACED.

---

[3] Instead, she offers some speculative justification which supposedly motivated her action. *See* Opp'n p. 11. But none of that was alleged in her amended complaint; her brief does not operate to further amend the pleading. *Ward v. Coastal Carolina Health Care, P.A.*, 597 F. Supp. 2d 567, 573 (E.D.N.C. 2009).

6

Ms. Alexander is relying exclusively on temporal proximity to plausibly allege a Title VII claim of retaliatory discharge. *See* Opp'n p. 12. Further, she argues that the Court ***cannot*** consider the other circumstances attendant to her termination which are alleged in the amended complaint and are reflected in the documents integral to those allegations. The scope of review she posits is far too cramped as temporal proximity is but one of a variety of factors that the Court can use to determine improper motivation. The "context specific task" of deciding a Rule 12(b)(6) motion demands that the Court must not ignore facts that break the requisite causal connection between protected activity and the adverse employment action. *Batchelor*, 747 F. Supp. 3d at 858.

Thus, the Court must consider the fact that the other three members of management who had joined her in supporting the recommendation to immediately terminate Mr. Gensch (Bethel, Lake, and Edwards) did not suffer any adverse employment action following their so-called protected activity. Rather, nearly three months later (and long after the Gensch incident had faded from the scene), Ms. Alexander alone was terminated.

The Court must also consider the fact that NNE's counseling of Ms. Alexander about her job performance preceded her protected activity (that is, her February 2024 internal complaint). No inference of causation can be reasonably drawn where discipline continued thereafter. "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever

engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).[4]

## IV. MS. ALEXANDER HAS ABANDONED HER HWE AND GENDER-BASED CLAIMS OF DISCRIMINATORY TREATMENT.

Once again, Ms. Alexander makes a perfunctory argument that she had exhausted her HWE claim before the EEOC without citation to supporting authority or distinguishing the authority cited by NNE. In effect, Ms. Alexander has abandoned the HWE claim. *See Bronitsky*, 2013 WL 5327447, at *1.

Similarly, Ms. Alexander has matched the conclusory allegations made in her amended complaint with equally conclusory arguments that the gender discrimination claims asserted are plausible. *See* Opp'n pp. 16-17. She does not meet NNE's arguments (or distinguish the cases cited) that she has failed to plausibly allege that she was performing her job satisfactorily, and that the demotion/discharge gives rise to an inference of discrimination. Accordingly, these claims in the Second Claim for Relief are ripe for dismissal.

## V. ALTERNATIVELY, MS. ALEXANDER HAS FAILED TO PLAUSIBLY ALLEGE A HWE CLAIM.

While Ms. Alexander does advance a *pro forma* argument in support of her HWE claim, albeit comingled with her gender-based disparate treatment claim, *see*

---

[4] *See also Mitchell v. Booz Allen Hamilton Inc.*, No. 123CV00653PTGLRV, 2024 WL 993872, at *6 (E.D. Va. Mar. 7, 2024) (applying *Slattery* in dismissing a retaliation complaint), *aff'd sub nom. Mitchell v. Hamilton*, No. 24-1223, 2025 WL 1431175 (4th Cir. May 19, 2025); *Feldman v. Law Enf't Assocs. Corp.*, 752 F.3d 339, 349 (4th Cir. 2014) (recognizing that a "legitimate intervening event" can break the requisite causal connection between protected activity and termination).

Opp'n p. 16, it cannot survive NNE's motion. She relies primarily on a few challenged discrete acts to plausibly show that an objectively hostile work environment existed. The reliance is misplaced as a HWE claim is inherently atmospheric-based and not created by the disappointment in being relieved of a single job duty or receiving constructive feedback on overall job performance. Moreover, Ms. Alexander does not even attempt to distinguish the case law cited by NNE in support of its argument.

## VI. MS. ALEXANDER'S BARE BONED AND CONCLUSORY ALLEGATIONS OF AGE DISCRIMINATION ARE INSUFFICIENT.

Ms. Alexander argues that the two facts she has alleged – she was 49 years old at the time her demotion/discharge and, over some indeterminate period, three managers reporting to Mr. Bech (age unknown) and older than him (ages unknown) had been previously demoted (for unknown reasons) – nudge her ADEA claims "beyond the realm of 'mere possibility' into 'plausibility.'" *Batchelor*, 747 F. Supp. 3d at 858 (cleaned up). Not true for the reasons set out in the Fourth Circuit decisions cited by NNE in its opening brief, which Ms. Alexander declined to distinguish in favor of citing *Nemet*[5] for the fifth time.

---

[5] *Nemet Chevrolet, LTD v. Consumersaffairs.com, Inc.*, 591 250, 255 (4th Cir. 2009).

## VII. REDA DOES NOT PROTECT THE "SAFETY CONCERNS" RAISED BY MS. ALEXANDER OVER MR. GENSCH'S RETURN TO WORK.

As with Title VII, the scope of REDA is not limitless. Rather, the General Assembly constricted the protection against retaliation to employees, who in good faith, take (or threaten to take) certain enumerated actions to remedy a workplace condition that is violative of one of the eight statutes. As relevant here, Ms. Alexnader tries to shoehorn her recommendation to immediately fire Ms. Gensch into Section 95-241(a)(1)b of REDA, which addresses workplace conditions violative of the Occupational Safety and Health Act of North Carolina ("OSHANC"). In particular, Ms. Alexander argues that Mr. Gensch's continued employment breached what is colloquially known as the General Duty Clause of OSHANC,

Ms. Alexander's argument tacitly acknowledges that management's decision whether to return to work an employee who had assaulted a female he thought was threatening him is not violative of any specific OSHANC standard. The General Duty Clause is a catch-all provision for recognized hazards that are not regulated by a specific standard. *See* https://www.labor.nc.gov/osh/osh-enforcement-procedures/fom-chapter-04-violations. More importantly, her statutory coverage analysis begins and ends with the identification of the General Duty Clause. She does not plausibly explain how the return-to-work decision implicates a "recognized

10

hazard" to the NNE workforce that is likely to cause death or serious physical harm. *Id.* Speculation fills all these gaps.[6]

The *Driskell* decision[7] cited by Ms. Alexander makes clear that her complaint about Mr. Gensch's drunken behavior committed outside of both the NNE facility and working hours lies outside the scope of REDA. Moreover, as a prudential matter, this Court should not lead the way in expanding REDA's coverage. *See Batchelor*, 747 F. Supp. 3d at 864 ("in predicting how the highest court of a state would address an issue, this court 'should not create or expand a [s]tate's public policy'") (citations omitted).

<u>CONCLUSION</u>

For the foregoing reasons and those asserting in its opening brief, NNE prays that the Court dismiss Ms. Alexander's amended complaint, and otherwise award NNE such other relief as the Court deems just and proper.

Respectfully submitted, this the 10th day of November, 2025.

WILLIAMS MULLEN

By:/s/ Lauren Fussell
    Lauren Fussell
    N.C. State Bar No. 49215
    P.O. Box 1000
    Raleigh, NC  27602
    lfussell@williamsmullen.com
    Telephone: (919) 981-4000
    Fax: (919) 981-4300

---

[6] Indeed, the reasonable conclusion to draw from paragraph 25 of the amended complaint and page 9 of ECF No. 8-4 is that NNE returned Mr. Gensch to work without incident following the conclusion of the investigation initiated by Mr. Bech.

[7] *Driskell v. Summit Contracting Grp., Inc.*, 828 F. App'x 858,867 (4th Cir. 2020) (complaint involved onsite and on-hours misconduct).

11

N.C. Bar No. 49215

*Attorneys for NNE, Inc.*

12

<strong><u>CERTIFICATE OF WORD COUNT</u></strong>

Pursuant to Local Rule 7.2(f)(2)(A), I certify that the foregoing memorandum, exclusive of case caption, the signature block, any required certificates, contains 2,704 words, and therefore complies with the applicable word limit.

WILLIAMS MULLEN

*/s/ Lauren Fussell*
Lauren Fussell
N.C. State Bar No. 49215
lfussell@williamsmullen.com
301 Fayetteville Street, Suite 1700
(27601)
P.O. Box 1000
Raleigh, NC 27602
Telephone: 919. 981.4000
Facsimile: 919.981.4300
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that, on November 10, 2025, the foregoing document was filed through the CM/ECF system and that such filing was sent electronically to those parties registered with the CM/ECF system.

WILLIAMS MULLEN

By: /s/ Lauren Fussell
Lauren Fussell

14